IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERMY CHACON

       Plaintiff,

vs.                                                                         No. CIV 03-438 JC/ACT

SHAWN ALLEN WATSON, individually and as an officer
with the New Mexico State Police, and JOHN DOES,
individually and in their capacity as
CHIEF OR LIEUTENANT OF THE NEW MEXICO
STATE POLICE, COLFAX OFFICE,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity, filed October 3, 2003 (*Doc. 10*). The Court, having reviewed the Motion, memoranda, and the relevant law, finds the Motion well taken and it is, therefore, granted.

**I.**     **Background**

Defendant Shawn Allen Watson ("Watson"), a New Mexico State Police officer, was on patrol duty in Colfax County, New Mexico on Thursday, December 20, 2000. Watson was driving his marked police vehicle and was engaged in "Code 301 patrol," police jargon for actively seeking traffic violations. He was traveling northbound on State Road 434 at approximately 2:23 p.m. when he passed a silver Oldsmobile traveling southbound. Both vehicles were traveling at approximately thirty-five miles per hour. Watson observed that there were no seat belts fastened across the driver

and passenger of the Oldsmobile as required by § 66-7-372 NMSA 1978. Watson turned his vehicle around, engaged his emergency equipment and followed the Oldsmobile. Watson contends that as he approached the Oldsmobile from behind, it paused in the road in what Watson considered to be an unusual manner. Plaintiff denies there was any such pause and argues that even if his vehicle did pause, it was unremarkable and could not have raised reasonable suspicion for an investigatory stop. The Oldsmobile then turned right and pulled into the parking lot of the Valley Market. Watson next observed two men exit the vehicle and walk toward the market.

Watson parked his cruiser behind the Oldsmobile and approached the two men. The driver identified himself as Ermy Chacon ("Plaintiff"). Watson informed Plaintiff of the seat belt violation he had observed and requested Plaintiff's vehicle registration and proof of insurance. Notably, Plaintiff did not state at that time that he had, in fact, been wearing a seat belt, though he makes that assertion now. When Plaintiff opened the driver's side door of his vehicle to retrieve the documents, Watson observed two open cans of Bud Light on the center console and a Bud Light box on the right side floorboard.

During this brief encounter, Watson made the following further observations, all of which Plaintiff denies: Plaintiff's eyes were bloodshot and watery, his speech was slurred, and there was a strong odor of alcohol emanating from Plaintiff's breath. Watson then asked Plaintiff how much alcohol he had consumed and, according to Watson, Plaintiff replied, "two beers." Plaintiff denies making this statement and also denies that he had been drinking at all.[1] Watson then requested that

---

[1] Plaintiff currently asserts that he "had not been drinking" and that he "did not tell Officer Watson that he had drank [sic] two beers." Pl's Resp., Exh. 2. Remarkably, however, Plaintiff does not deny that, during their conversation that day, Watson asked him if he had been drinking nor does he claim to have given some different response to the question when it was asked.

Plaintiff perform several field sobriety tests and Plaintiff agreed. Watson administered the Standard Field Sobriety Tests ("sobriety tests") in front of his cruiser so that Plaintiff's performance would be recorded on video camera, which it was.[2] It is undisputed that Plaintiff was unable to successfully complete the sobriety tests.[3] Watson determined at that point that there was probable cause to believe Plaintiff had operated a motor vehicle under the influence of intoxicating liquor, contrary to State law, and placed Plaintiff under arrest. Watson then transported Plaintiff to Angel Fire, New Mexico for breath testing, but the machine at that location proved unavailable. Watson further transported Plaintiff to the Cimarron Police Department in Cimarron, New Mexico. At 3:56 p.m., nearly one and one-half hours after Defendant initially encountered Plaintiff's vehicle, Plaintiff provided breath samples. Two breath samples were taken and .00 of alcohol was detected in each. Recognizing that the breath test results were not necessarily reliable because of the delay in testing, Watson arranged for Plaintiff to provide a blood sample for testing in Raton, New Mexico. Another police officer transported Plaintiff to Raton. At 7:14 p.m. in Raton, Plaintiff provided blood samples. The samples were subsequently sent to New Mexico Scientific Laboratory for analysis. The New Mexico State Police did not receive the results of the test, which proved negative for both alcohol and drugs, until February 21, 2002.

While Watson and Plaintiff were at the Cimarron Police Department and after Plaintiff had been placed under arrest, Watson prepared the paperwork necessary to charge Plaintiff. This included a Driving While Intoxicated ("DWI") Citation, Criminal Complaint ("Complaint"), and

---

[2]Watson is properly trained and certified to administer the sobriety tests.

[3]Defendant has submitted a videotape recording clearly depicting Plaintiff's failed attempt to perform the field sobriety tests. Def's Mot., Exh. A-2.

Statement of Probable Cause ("Statement") to be filed in Magistrate Court. Plaintiff was thereby charged with violations of NMSA §§ 66-7-372 (No Safety Belt), 66-8-138 (Possession of Alcoholic Beverage in Open Container in Vehicle) and 66-8-102 (DWI). Pursuant to the authority granted to him under New Mexico Magistrate Court Rule 6-108, Watson filed the Complaint and served as prosecutor on all three charges until February 12, 2002, at which time the District Attorney ("D.A.") entered the case on behalf of the State as to the charge of DWI. N.M. Metro. Ct. R.Cr.P. 6-108. From that date forward, the D.A. assumed all further prosecutorial duties as to the DWI charge. On May 20, 2002 (the day of trial), after receiving the results of the blood test, the D.A. dismissed the DWI charge. On the same day but prior to the DWI dismissal, Plaintiff (through his attorney) and Watson (as prosecutor) entered into an oral agreement whereby Plaintiff would plead guilty to the No Safety Belt charge and Watson would drop the charge of Open Container. The parties proceeded before the magistrate judge, presenting the plea agreement whereby Plaintiff plead guilty to the only remaining charge, the seat belt violation. The court, however, rejected the plea agreement, advising that under the circumstances the seat belt charge might also be dismissed at trial. Watson then dismissed both the Open Container charge and the No Safety Belt charge.

On April 9, 2003, nearly one year after all charges were dropped, Plaintiff filed this lawsuit. He alleges Initiation and Pursuit of Prosecution Without Probable Cause by Defendants (Count I), Negligent Hiring, Supervision and Training by Defendant [sic] John Does as to Defendant Watson (Count II), and Malicious Abuse of Process (Count III).

## II. **Standard of Review**

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of

4

law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

### III. Discussion

#### A. *Qualified Immunity*

Having strained to identify the specific claims in Plaintiff's Count I, the Court construes it to contain (1) a Section 1983 action alleging a Fourth Amendment violation based on an illegal initial investigative "stop;" (2) a claim of unlawful arrest and detention in violation of Plaintiff's Fourth

5

Amendment protections; and (3) a claim of continued constitutional violation invoking the Fourth Amendment under a theory of malicious prosecution. Each of these claims is in some way premised on Plaintiff's assertion that Watson lacked reasonable suspicion to conduct a traffic stop of his vehicle because Plaintiff was in fact wearing a seat belt. Watson moves the Court for summary judgment in part by asserting qualified immunity.

Analysis of summary judgment motions that raise the affirmative defense of qualified immunity deviates from the norm because of the purpose of qualified immunity.[4] *Holland v. Harrington*, 268 F.3d 1170, 1185 (10th Cir. 2001). Ordinarily, where a Section 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that (1) the official violated a constitutional or statutory right; and (2) that the constitutional or statutory right was clearly established when the alleged violation occurred. *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). If, viewing the facts alleged in the light most favorable to the non-moving party, the plaintiff demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant who must prove that no genuine issues of material fact exist and that the defendant is entitled to judgment as a matter of law. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001). "In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense." *Olsen v. Layton*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citing *Farmer*, 288 F.3d at 1259). A motion for summary judgment based on qualified immunity should be properly denied

---

[4]Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id*.

if the record shows an unresolved dispute of historical fact relevant to the qualified immunity analysis. *Id.* (citing *Salmon v. Schwartz*, 948 F.2d 1131, 1136 (10th Cir. 1991)).

    a. *Fourth Amendment and the initial encounter*

Plaintiff contends that Watson's belief that Plaintiff and his passenger were unbelted was mistaken or fabricated and, therefore, arguably was unreasonable. Clearly, if Watson stopped Plaintiff's vehicle without reasonable suspicion that criminal activity was afoot, he violated Plaintiff's constitutional protections under the Fourth Amendment. Because there is no evidence save Plaintiff's own statement that he was wearing a seatbelt and Watson's contrary statement that he was not, Plaintiff frames the issue as one of credibility, placing it within the province of the jury and making it improper for determination on summary judgment. However, the Court rejects Plaintiff's analysis not as unsound in and of itself but because it is built upon a mistaken premise. The Court finds that Watson's initial contact with Plaintiff is more accurately characterized as a consensual encounter, for which reasonable suspicion is not required, than a traffic "stop" for which reasonable articulated suspicion is necessary. Though it is undisputed that Watson initially suspected Plaintiff was in violation of the seat belt laws, and that Watson engaged his emergency equipment and followed Plaintiff's vehicle, it is equally undisputed that Plaintiff was already outside his vehicle and walking toward the Valley Market when Watson initially approached him for conversation. While neither party guides the Court to an understanding of why Plaintiff did not pull his vehicle over summarily upon seeing Watson's cruiser behind him with its equipment engaged, the undisputed fact is that he did not and the reason does not bear on the Fourth Amendment analysis here.

Though bright line rules for determining when a citizen is seized in every possible circumstance do not exist, for such inquiries are necessarily fact-bound, it is well settled that "not all

personal intercourse between policemen and citizens involves seizures of persons" and further that "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' took place...." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). Additionally, a consensual encounter has been defined as "the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official." *U.S. v. Patten*, 183 F.3d 1190, 1194 (1999) (quoting *U.S. v. Werking*, 915 F.2d 1404, 1409 (10th Cir. 1990)).

In light of established case law, Plaintiff cannot successfully argue on the facts of this case that his initial contact with Watson constituted a "seizure" within the meaning of the Fourth Amendment. Whether any given encounter is an investigative detention involving Fourth Amendment protections or a consensual encounter depends upon whether a person held an objectively reasonable belief that he was free to leave and/or disregard a request for information. *Werking*, 915 F.2d at 1408 (citing *INS v. Delgado*, 466 U.S. 210, 215 (1984)). Furthermore, an encounter does not become non-consensual simply because an officer fails to advise defendant that he does not have to respond to the officer's questioning and is free to leave. *United States v. Gordon*, 173 F.3d 761, 765 (10th Cir. 1999). Here, not only did Plaintiff perceive himself free to leave the officer's presence, he was in fact walking away from Watson and toward the market when Watson approached him.[5] On the facts before it, the Court finds that Plaintiff was cooperating voluntarily and consensually with Watson during the initial phase of the encounter. Hence, the dispute regarding the reasonableness

---

[5]The Court recognizes that Watson had parked his cruiser behind Plaintiff's vehicle, though it is not clear from the videotape or elsewhere on the record whether Plaintiff's car was actually blocked in. It is clear that Plaintiff was voluntarily outside his vehicle, pursuing his own agenda, and thus cannot claim he was "seized" at that time.

8

of Watson's suspicion of a seat belt violation is immaterial, for the Fourth Amendment's strictures were not implicated at that point.

b. *Fourth Amendment and the arrest and detention*

During the brief, consensual encounter with Plaintiff as discussed above, several things transpired to further arouse Watson's suspicions that criminal activity was afoot. First, when Plaintiff opened the front door of his Oldsmobile to retrieve the documents, Watson was able to observe the two open cans of beer on the console along with a box of beer on the floorboard. Plaintiff does not dispute the existence of the beer in his vehicle, but now asserts that his passenger alone was imbibing in both open cans. The Court assumes Plaintiff's current factual rendition to be accurate for purposes of this motion, but it is of no assistance to him, for it is a violation of the law to have open beer in one's car at all. NMSA § 66-8-138. After seeing the beer, Watson requested that Plaintiff perform the field sobriety tests, Plaintiff agreed and he was then unable to successfully complete the tests as instructed. At that point, with probable cause for arrest clearly established, Watson placed Plaintiff under arrest. Viewing all evidence in the light most favorable to Plaintiff, the Court declines to find any constitutional violation in this series of events. Consequently, there is no genuine issue of material fact in need of resolution on this claim, for Plaintiff has failed to establish a constitutional violation as required to defeat Defendant's entitlement to qualified immunity.

c. *Malicious Prosecution and the Fourth Amendment*

When a Section 1983 action is based on a claim of malicious prosecution, determining whether a plaintiff's federal rights have been violated begins with an analysis of the common law elements of malicious prosecution. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). The Tenth Circuit recently expounded upon its holding in *Taylor* with regard to the relationship between

9

the constitutional violation and the common law tort analysis specifically in the context of a Fourth Amendment claim brought under Section 1983 and asserting a claim of malicious prosecution. In *Pierce v. Gilcrest*, 359 F.3d 1279 (March 2, 2004), the court announced that general principles of tort law should be applied in the aforementioned analysis as opposed to the law of the jurisdiction where the cause of action originated. The *Pierce* opinion also rejected an argument that *Taylor* requires a Plaintiff to meet each element of malicious prosecution in favor of a more general approach, looking to the principles of the traditional common law tort and applying them only by analogy. *Id.* Consequently, the Court will not look to the hybrid New Mexico tort of malicious abuse of process[6] for its elements when analyzing Plaintiff's constitutional claims, as district courts have done in the past, but will instead rely on the general principles of malicious prosecution as discussed in *Pierce* to provide a starting point.

As a preliminary matter, the Court notes Watson's argument that because he was divested of authority to prosecute the DWI charge when the D.A. entered his appearance in that matter, he cannot be held liable for a tort resulting from its continued prosecution after that point. Insofar as Watson intends to suggest that the D.A.'s entry is an independent, intervening event serving to absolve Watson of liability which might otherwise exist, he is mistaken. In the words of Judge Posner, "[a] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial - none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision," for if police officers "have

---

[6]In 1997, the Supreme Court of New Mexico merged the two torts of malicious prosecution and abuse of process into one cause of action, namely "malicious abuse of process." *DeVaney v. Thriftway Mktg. Corp.*, 124 N.M. 512, 517, 518 (1997), *cert. denied*, 524 U.S. 915 (1998).

10

been instrumental in the plaintiff's continued confinement or prosecution...[t]hey cannot hide behind the officials whom they have defrauded." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (cited with approval in *Robinson v. Maruffi,* 895 F.2d 649, 655-56 (10th Cir. 1990)).

That said, the first element of traditional malicious prosecution is initiation of the original action. Plaintiff successfully meets this element without issue, as it is undisputed that Watson in fact initiated the prosecution of all three charges against Plaintiff.

The second element is that the original action must have been terminated in favor of the plaintiff. The Supreme Court has recognized this element as part of a Section 1983 claim for unconstitutional conviction or imprisonment. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (citing *Young v. First State Bank*, 628 P.2d 707, 709-10 (Okla. 1981)). In this case, though courts have not always been in complete agreement on whether dismissal of charges necessarily satisfies this element, Plaintiff has satisfied his burden on summary judgment, as it is uncontroverted that the State dropped all the charges against Plaintiff.

The third element in the tort of malicious prosecution is that there must have been no probable cause to support the original arrest, continued confinement, or prosecution. "The probable cause requirement is central to the common law tort because not every arrest, prosecution, confinement, or conviction that turns out to have involved an innocent person should be actionable." It is on this element that Plaintiff's claim must fail because the Court has determined that the arrest was lawful. Not only does Plaintiff fail to meet this element of the tort, but such failure on an element considered "central to the tort" dictates the answer to the ultimate question for the Court, which is whether the prosecution of Plaintiff for these crimes worked a violation of Plaintiff's Fourth Amendment protections. Absent a showing that Watson lacked probable cause for the arrest, the Court finds no

11

constitutional violation to defeat Watson's assertion of qualified immunity on this claim.

In summary, there remains no genuine issue of fact in need of resolution on any of the claims in Plaintiff's Count I and it is, therefore, dismissed with prejudice.

**B.** *Absolute Immunity*

It is well settled that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (quotation omitted); *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 149 (10th Cir. 1991). Absolute prosecutorial immunity, however, extends no further than necessary to protect those activities. *Harlow v. Fitzgerald*, 457 U.S. 800, 811 (1982).

In determining whether particular acts by government officials are eligible for absolute immunity, courts must focus on the nature of the function performed, not the identity of the actor who performed it. *Malik v. Arapahoe County Dept of Soc. Servs.*, 191 F. 3d 1306, 1314 (10th Cir. 1999 ) (quoting *Buckley v. Fitzsimmons*, 509 U. S. 259, 269 (10th Cir. 1993)); *accord Snell,* 920 F. 2d at 687. In New Mexico, state police officers have been granted statutory authority to act as prosecutors in limited circumstances including misdemeanor traffic violations. N.M. Metro Ct. R.Cr.P. 6-108. A prosecutor's decision regarding dismissal of charges is entitled to absolute prosecutorial immunity because it is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Brodnicki v. City of Omaha*, 75 F.3d 1261, 1268 (8th Cir. 1996) ("The decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions."). Thus, insofar as Watson functioned as a prosecutor and in a manner

intimately associated with a court proceeding as distinguished from his investigative function, he is also eligible for the blanket protections of absolute immunity.

### C. *Malicious Abuse of Process*

Plaintiff also brings a claim sounding in malicious abuse of process pursuant to New Mexico state law. New Mexico law deviates slightly from the general common law principles of malicious prosecution considered above because New Mexico has merged the two torts of abuse of process and malicious prosecution, discussed *supra* at footnote 6. *DeVaney v. Thriftway Mktg. Corp.*, 124 N.M. 512 (1997). The state law analysis further differs from that of the § 1983 claim in that failure on any one element is fatal to the claim. The elements comprising the New Mexico state tort of malicious abuse of process are: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.[7] *Id.* at 517, 518. It is clear, again, that Watson initiated judicial proceedings against Plaintiff on all three charges, and if liability were established Plaintiff could undoubtedly show damages as a result of his brief incarceration and other inconveniences. Plaintiff falls short on the third element, however, by failing to offer any competent evidence indicating that Watson acted to accomplish an illegal objective and used the system to further that end. In fact, his only evidence on this element is his own bald assertion that Watson acted against him because of his

---

[7]Termination of the original action in plaintiff's favor is not treated as an element of the tort under *Delaney*, which imposes differing standards of proof for a plaintiff depending upon when the plaintiff opts to initiate the proceedings. It is implicit in that opinion, however, that a cause of action for malicious abuse of process could accrue before termination of the original action (a successful claim prior to termination requires clear and convincing evidence as compared to a claim asserted post-termination which need only satisfy the preponderance of the evidence standard of proof).

Hispanic ethnicity. Compl. at 5. While evidence of racial discrimination will often be circumstantial, Plaintiff offers no competent summary judgment evidence whatsoever to support this allegation. Moreover, Plaintiff has similarly failed to offer evidence tending to show that Watson committed an act other than such as would be proper in the regular prosecution of a claim, falling short on the second element of his claim. Plaintiff undoubtedly relies, again, upon the original encounter being unlawful to meet the second element, but the Court has determined otherwise. In sum, Plaintiff's bald assertions of racial animus and his misplaced reliance on the initial encounter with Watson are insufficient to resist summary judgment on his state law claim of malicious abuse of process.

The Court finds no competent summary judgment evidence to support Plaintiff's theory that Watson acted with the requisite motive or acted improperly when prosecuting claims against Plaintiff. Hence, there is no genuine issue of material fact remaining on this claim and Count III is, therefore, dismissed with prejudice.

**D.** *Failure to Serve John Does*

Finally, the Court finds the issue of supervisory liability moot, as there is no surviving claim against Defendant Watson. The Court notes, however, that even if there remained a live claim against Watson, dismissal of the John Does in Plaintiff's complaint would still be proper. Federal Rule of Civil Procedure 4(m) requires that service of process be effectuated within 120 days of the filing of the complaint. When a plaintiff fails to serve a defendant within the 120-day period, the district court "shall dismiss the action without prejudice [as to that defendant] or direct that service be effected within a specified time." *Ledbetter v. City of Topeka, Kan.,* 318 F. 3d 1183 (10th Cir. 2003). Here, Plaintiff asserts that because discovery was stayed pending a ruling on this motion, he has been unable to determine the identity of the "John Does" he named in his Complaint, which was filed on April 9,

2003 (*Doc. 1*). This explanation, however, provides insufficient justification for failing to comply with the rules of civil procedure. If it was genuinely impossible for Plaintiff to determine the identity of the Police Chief in Colfax County without engaging in formal discovery, or if Plaintiff was unable to comply with Rule 4(m) for any other reason, he should have properly requested an extension of time through counsel but did not.

Rule 4(m) aside, the Court concludes that because no supervisory liability can be found given the lack of individual liability on the part of Watson as a matter of law, the issue is moot and Count II of Plaintiff's Complaint is dismissed with prejudice.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity, filed October 3, 2003 (*Doc. 10*) is GRANTED and Plaintiff's Complaint is dismissed in its entirety with prejudice.

Dated this 6th day of May, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:

    Alan H. Maestas
    The Herrera Firm, P.C.
    Taos, New Mexico

Attorneys for Defendant:

    Michael Dickman
    Santa Fe, New Mexico